ESTATE OF LEONIDAS C. PAPSON, DECEASED, COSTA L. PAPSON, EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10249–76.    Filed September 22, 1980.

*Costa L. Papson,* for the petitioner.
*Joan Ronder Domike* and *H. Stephen Kesselman,* for the respondent.

OPINION

TANNENWALD, *Judge:* Petitioner seeks by motion to have this Court consider, as part of the Rule 155 proceeding to implement our previously published opinion (73 T.C. 290 (1979)), an issue relating to the eligibility of certain U.S. Treasury bonds (flower bonds) for use in payment of Federal estate taxes; the issue arises because of the alleged comatose state of decedent at the

---

time said bonds were purchased. For the reasons hereinafter stated, we conclude that petitioner's motion should be denied without prejudice and that we should accept a suggestion of respondent which should enable petitioner to avoid the "whipsaw" possibilities arising out of the interrelationship between the issue of eligibility for payment of estate taxes and the appropriate valuation to be placed upon such bonds for estate tax purposes. See *Estate of Pfohl v. Commissioner*, 69 T.C. 405, 406–407 (1977).

The flower bonds were valued at par on the estate tax return, presumably because the aggregate amount of reported bonds was less than the estate tax liability shown on the return.[1] See *Bankers Trust Co. v. United States*, 284 F.2d 537 (2d Cir. 1960); Rev. Rul. 69–489, 1969–2 C.B. 172; Rev. Proc. 69–18, 1969–2 C.B. 300. The notice of deficiency, issued on September 10, 1976, did not place the value of the bonds in issue nor did the petition filed on November 19, 1976, or the answer filed on January 12, 1977. No question relating to the value of the bonds was raised at any time prior to the submission of this case on a full stipulation of facts on April 10, 1978, or in the briefs of the parties filed subsequent to the submission.[2] Indeed, the first time the Court was apprised of the existence of any problem relating to the flower bonds was in a letter to the Court from respondent dated December 31, 1979.

This Court's opinion in *Estate of Pfohl v. Commissioner, supra*, in which we announced our jurisdiction under appropriate circumstances to determine the eligibility of flower bonds for use in payment of estate taxes, was filed and made public on December 6, 1977,[3] a point of time well before the date this case was submitted. Moreover, although petitioner's motion papers are not completely clear on this point, it appears that petitioner was on notice as to the issue of eligibility some time prior to March 1978—also before this case was submitted.[4]

---

[1]Flower bonds with a par value of $400,000 were included in the estate tax return and were offered in payment of estate taxes as follows: $200,000 in March 1974 at the time the return was filed, $100,000 in March 1975, $50,000 in March 1977, and $50,000 in March 1978.

[2]At the time of submission, the Court specifically inquired whether any valuation issue remained, and was informed that "the valuation issue" (primarily relating to the valuation of real estate) had been settled.

[3]The Court releases its opinions to various tax services on the filing date.

[4]The affidavit of petitioner attached to the motion states that the $50,000 in bonds,

The usual rule is that a Rule 155 proceeding may not be used to raise a new issue. *Bankers' Pocahontas Coal Co. v. Burnet*, 287 U.S. 308 (1932); *Estate of Stein v. Commissioner*, 40 T.C. 275, 280 (1963). See also *Robin Haft Trust v. Commissioner*, 62 T.C. 145, 147 (1974), revd. on other grounds 510 F.2d 43 (1st Cir. 1975). Contrary to petitioner's contention, the entire estate tax return "and each and every item listed therein" is not before us. Only those issues raised by the pleadings or at trial are under submission. For the issue as to eligibility to be considered, it would be necessary to reopen the record, permit petitioner to raise the eligibility question by way of an amendment to petition in the context of the issue of the proper valuation of the flower bonds (see *Estate of Pfohl v. Commissioner*, 70 T.C. 630 (1978)), and hear testimony and/or receive a stipulation of facts on the issue of the comatose state of decedent and the effect thereof on the purchase of the flower bonds.[5] We think that, given the alternative remedy which seems to be available to petitioner, we should not follow this course.

Respondent suggests in his memorandum in opposition to petitioner's motion:

> If the petitioner were to request the Court to delay entering its decision while the petitioner challenges the Bureau of the Public Debt's rejection of the bonds in the U.S. Court of Claims (*Watson Estate v. Blumenthal*, 586 F.2d 925 (2d Cir. 1978)), then a computation under Rule 155 can be entered which reflects the determination of that court.

We see no need to await a request by petitioner before following respondent's suggestion and, accordingly, we will issue an order providing petitioner with an opportunity to follow the Court of Claims path before entering our decision herein. We take this action without in any way conceding the correctness of respondent's contention that we do not have jurisdiction to determine the issue relating to the eligibility of the flower bonds. Our acceptance of respondent's suggestion is merely

---

submitted in March 1977, were rejected by the Bureau of Public Debt and that in March 1978 another $50,000 were submitted and were also rejected. See also note 1 *supra.* In addition to these bonds, the Bureau of Public Debt has withdrawn its previous acceptance and credit of the $200,000 submitted with the return because of the alleged comatose condition of the decedent at the time they were purchased. Thus, of the $400,000 face value of bonds tendered for redemption and credit, only those which were submitted and credited in April 1975 are conceded by the Bureau to be eligible because they were purchased personally by the decedent.

[5]We note that petitioner suggests that a question relating to the validity of a change in the regulations of the Bureau of Public Debt may also be involved.

based upon the combination of circumstances that, under our normal procedures, it is too late to bring the issue of valuation (and therefore eligibility) before us, and our recognition that the Second Circuit Court of Appeals has indicated in *Estate of Watson v. Blumenthal*, 586 F.2d 925 (2d Cir. 1978), that an action for a declaratory judgment or mandamus against the Secretary of the Treasury as to the eligibility of flower bonds was not within the jurisdiction of the U.S. District Courts and that the proper forum to determine the issue was the Court of Claims by way of an action for damages based upon a claim of breach of contract resulting from the tender of the bonds and a refusal thereof. See 586 F.2d at 934. In this connection, we note that the Court of Appeals has not been called upon to resolve the jurisdictional problem where the valuation of flower bonds for estate tax purposes based on the question of eligibility is the issue before a court. In point of fact, despite the decision in *Estate of Watson v. Blumenthal, supra,* the respondent's appeal to the Second Circuit Court of Appeals in *Estate of Pfohl* was ordered withdrawn pursuant to stipulation of the parties.[6] Thus, as far as we are concerned, the *Estate of Pfohl* opinions continue to retain their vitality. We do not believe that the validity of those opinions *necessarily* rests on the fact that the Bureau of Public Debt agreed in *Estate of Pfohl* to be bound by our decision. See 69 T.C. at 407–408. See also *F.T.C. v. Texaco, Inc.,* 517 F.2d 137 (D.C. Cir. 1975); *George H. Lee Co. v. Federal Trade Commission,* 113 F.2d 583 (8th Cir. 1940).

Because of the potential "whipsaw" situation, and because we cannot be certain as to whether the Court of Claims will agree with the Second Circuit Court of Appeals on the jurisdictional question or as to what the ultimate disposition of the matter by the Court of Claims will be, we think that petitioner's motion should be denied without prejudice in order that this Court may be in a position to take any further action that may seem appropriate.

*An appropriate order will be entered.*

---

[6]The respondent filed an appeal on Apr. 25, 1979, and, on May 31, 1979, the Court of Appeals issued an order confirming the withdrawal of the appeal.