IVAN K. LANDRETH and LUCILLE LANDRETH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Landreth v. Commissioner
Docket No. 4432-83.
United States Tax Court
T.C. Memo 1986-242; 1986 Tax Ct. Memo LEXIS 368; 51 T.C.M. (CCH) 1201; T.C.M. (RIA) 86242; June 16, 1986. *368 Robert J. Shaw and Eve M. Fitzsimmons, for the petitioners. Theodore J. Kletnick, for the respondent. SCOTT SUPPLEMENTAL MEMORANDUM OPINION SCOTT, Judge: On August 12, 1985, this Court filed its Memorandum Findings of Fact and Opinion in the above-entitled case, Landreth v. Commissioner,T.C. Memo. 1985-413, in which it was stated that decision would be entered under Rule 155. On April 22, 1986, respondent filed his computation for entry of decision under Rule 155, and on April 23, 1986, petitioners filed their computation for entry of decision under Rule 155. Each party filed a memorandum in support of his computation and each party filed a reply to the memorandum of the other party. The differences in the computations result from the method by which the amount of capital gain for the year 1978 from an installment sale is computed. In petitioners' computation, the capital gain is computed by use of a gross profit percentage of 77.20 percent, based on petitioners' statement that this amount was shown on their amended 1977 return. In respondent's computation, the gross profit percentage is 93.29 percent, based on the computation *369 used in petitioners' original income tax returns for the calendar years 1977 and 1978. Initially, it appears to the Court that the claim by petitioners that a gross profit percentage less than that used in the original return filed by petitioners for the years 1977 and 1978 should be used is an attempt by petitioners to raise a new issue in a proceeding under Rule 155. It is well settled that a new issue may not be raised in a Rule 155 proceeding. Bankers' Pocahontas Coal Co. v. Burnet,287 U.S. 308 (1932); Cloes v. Commissioner,79 T.C. 933 (1982); Estate of Papson v. Commissioner,74 T.C. 1338, 1340 (1980). All facts necessary to determine the issue which petitioners raise in the Rule 155 computation were not contained in the record made at the trial of this case, and effectively it requires a reopening of the record to decide the issue raised by petitioners. However, on April 22, 1986, the parties filed with the Court a Stipulation of Facts which incorporated those facts necessary to decide the issue raised in the Rule 155 computation which were not in evidence in this case prior to the filing of the memorandum opinion on *370 August 12, 1985. Respondent submitted this Stipulation of Facts for filing along with his computation under Rule 155 and at no point raised any objection to petitioners' raising a new issue under Rule 155. In view of the fact that effectively both parties have asked that we reopen the record to accept the additional evidence contained in the Stipulation of Facts filed by the parties on April 22, 1986, and decide the issue raised by petitioners, we will grant what in our view amounts to a joint motion to reopen the record to receive the Stipulation of Facts and decide the new issue raised by the parties. The facts as stipulated show that in 1977 petitioners sold their stock in Landreth Timber Co. and elected on their 1977 joint Federal income tax return to report their gain of $1,914,292 on the installment method. The contract price for the stock was $2,052,000 and the cost basis of the stock to petitioners was $137,708. On their 1977 joint Federal income tax return, petitioners reported $496,303 in installment sale gain based on the receipt by petitioners of a $532,000 installment payment in 1977 to which a profit percentage of 93.29 percent was applied. This profit percentage *371 was arrived at by dividing the $1,914,292 gain on the sale of the timber company stock by the $2,052,000 contract price of the stock. On their 1978 joint Federal income tax return, petitioners reported $1,418,008 in installment sale capital gain based on the receipt by petitioners of a $1,520,000 payment to which the profit percentage of 93.29 percent was applied. As is shown in the memorandum opinion filed in this case (T.C. Memo. 1985-413), in 1978 litigation concerning the stock sale arose and petitioners began to incur legal fees and related expenses in connection with this ligitation. During the years 1978 through 1982, petitioners incurred the following legal and related expenses: 1978
$ 1,379
1979
164,716
(including a commission of
$22,000)
1980
165,332
1981
134,850
1982
85,025
Total
$551,302
On April 15, 1981, petitioners filed an amended return for the taxable year 1977 in which they claimed that the legal fees and the $22,000 commission totaling $330,048 incurred in 1979 and 1980 should be added to the cost of the sale of the timber stock and thereby reduce the gross profit ratio to determine gain on the sale for 1977 to 77.20 percent. *372 [1] Petitioners applied the 77.20 percent to the $532,000 amount received in 1977, thereby arriving at an installment sale capital gain of $410,704 in 1977. This recomputation resulted in petitioners claiming a refund of 1977 taxes in the amount of $32,547. On April 15, 1981, petitioners also filed an amended return for the taxable year 1978 in which they claimed a refund for that year based on using a profit percentage to be applied to the $1,520,000 received in that year of 77.20 percent. On December 7, 1981, respondent accepted petitioners' claim for refund for the year 1977 after an audit of that year by one of respondent's agents. On February 8, 1982, petitioners' claimed overpayment for the year 1977 in the amount of $32,547 plus interest was applied against petitioners' 1979 tax liability. Respondent has never issued, nor have petitioners received, a statutory notice of deficiency of a deficiency assessment for their taxable year 1977. Any assessment of a deficiency for the year 1977 is barred by the statute of limitations. *373 On April 2, 1982, petitioners filed a second amended return for the taxable year 1978 claiming a capital loss of $142,903 representing legal fees incurred during 1981, which loss they claimed on this return should be applied against the capital gain in 1978, but on the second amended return this amount was not used to further reduce the gross profit percentage of 77.20 percent which petitioners had computed in 1977 and claimed on their first amended return for 1978. On December 29, 1982, petitioners filed a third amended return for the taxable year 1978 claiming a capital loss of $79,322 representing legal fees incurred by petitioners in 1982. That loss was likewise applied against the capital gain petitioners had reported in 1978, but was not used to further reduce the gross profit percentage of 77.20 percent used in their amended 1977 return and their first amended 1978 return. The claims for refund reflected by petitioners' amended return for 1978, second amended return for 1978, and third amended return for 1978 have not been allowed or disallowed by respondent. On December 5, 1982, respondent issued a notice of deficiency to petitioners for the taxable year 1978, and petitioners *374 in their petition filed with the Court on February 25, 1983, from the December 5, 1982, notice of deficiency claimed that they should be allowed to deduct as capital losses the legal fees in the amounts of $142,903 and $79,322 incurred during the years 1981 and 1982. The Court, in Landreth v. Commissioner,T.C. Memo. 1985-413, decided this issue against petitioners and held that the legal fees incurred in 1981 and 1982 by petitioners were not deductible in 1978 but were proper deductions in the years incurred. The year 1977 was not and is not before the Court in this case. In our view, our holding with respect to the claimed deduction of legal fees incurred in 1981 and 1982 in effect disposes of the merits of petitioners' claim in this proceeding under Rule 155 that the legal fees incurred in 1979 and 1980 should be used to reduce the installment sale capital gain reported in 1978. Although not precisely so stated, petitioners apparently recognize this because their argument is directed primarily to their contention that since respondent accepted their amended return for 1977, thereby permitting a gross profit percentage of 77.20 percent to be used in that year *375 to determine the amount of installment sale capital gain for the year 1977, he should be required to permit them to use this same gross profit percentages for the calendar year 1978. Although not cast in the terms of estoppel, petitioners are effectively so arguing by contending that by accepting the 1977 amended return respondent is required to accept the same profit percentage in 1978. Estoppel does not bar the correction of a legal error. Automobile Club of Michigan v. Commissioner,353 U.S. 180, 184 (1957), and it may be for this reason that petitioners do not argue their point in the terms of estoppel. In view of our holding with respect to the 1981 and 1982 legal fees, it is clear that respondent's allowance of the use of the lower profit percentage, and therefore his allowance of petitioners' 1977 refund claim, was an error of law. Petitioners in effect recognize this, since they cite in their memorandum and rely primarily on cases holding that respondent cannot recoup in an open year an amount erroneously allowed in a prior year. No point would be served by a discussion in detail of the cases cited by petitioners, since it is clear to us under the facts *376 here stipulated that respondent is not attempting in 1978 to recoup an erroneous allowance of an overpayment in 1977 but rather is merely contending that no further erroneous overpayment should be made in 1978. [2]
Respondent cites a number of cases dealing with a change in the sales price of property the gain from the sale of which had been reported under the installment sales method in a year subsequent to the year of sale. These cases hold that the price is adjusted only in the year the change occurs and subsequent years and that no retroactive *377 adjustment is made. We need not discuss these cases since in our view they also are not pertinent to the issue here presented. Petitioners in this case are merely contending that respondent should be bound by a mistake of law made in a prior year. The cases are uniform that in a subsequent year respondent is not bound by a mistake of law made in a prior year. Automobile Club of Michigan v. Commissioner,supra;Burlington Northern Railroad Co. v. Commissioner,82 T.C. 143, 146 (1984); Electric & Neon, Inc. v. Commissioner,56 T.C. 1324, 1333 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). The only further argument that petitioners make is that respondent should be bound by the doctrine of consistency to allow the use of the profit percentage in 1978 which was allowed in 1977.The cases petitioners cite in support of this argument are so factually different from the situation here that any detailed discussion of those cases is unwarranted. Those cases involved situations in which the taxpayers have kept records or reported an item in a certain manner over an extended period of years with respondent's *378 approval, and respondent proposes to retroactively change the prior approved method. For further discussion of this point, see Electric & Neon, Inc. v. Commissioner,supra at 1333. After consideration of all the arguments advanced by the parties, we conclude that respondent's computation for entry of decision under Rule 155 is the correct computation, and our decision will be entered in accordance with that computation. An appropriate decision will be entered.
Footnotes
1. This amount was arrived at by subtracting from $1,914,291 the amount of $330,048, resulting in $1,584,244 of gain on the sale, which was divided by the $2,052,000 contract price to arrive at the 77.20 percent.↩
2. Petitioners on their original 1979 return deducted as a capital loss the attorney's fees and commission incurred in that year. Although the record is not clear, they apparently filed an amended 1979 return reversing this action and did not claim as a capital loss the attorney's fees incurred in 1980. The record does not show whether the statute of limitations has expired as to petitioners' 1979 and 1980 taxable years. In any event, any errors in petitioners' returns for 1979 and 1980 do not justify allowing an erroneous adjustment in 1978 to permit a possible recoupment for errors made in petitioners' 1979 and 1980 returns.↩