T. BRUCE VEST AND E.P. VEST, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent *
Vest v. Commissioner
Docket No. 19071-87
United States Tax Court
T.C. Memo 1995-188; 1995 Tax Ct. Memo LEXIS 188; 69 T.C.M. (CCH) 2491; April 25, 1995, Filed *188 An appropriate order will be issued and decision will be entered in accordance with respondent's revised computation as amended. For petitioners: Steven H. Akre. For respondent: Michael W. Bitner and David R. Reid. WHALEN
WHALEN
SUPPLEMENTAL MEMORANDUM OPINION WHALEN, Judge: We issued our first opinion in this case at T.C. Memo. 1993-243 and directed that the decision be entered under Rule 155 of the Tax Court Rules of Practice and Procedure. All Rule references in this opinion are to the Tax Court Rules of Practice and Procedure. The parties have been unable to agree upon the amount of the deficiency for each of the years in issue, and the case is again before the Court to reconcile the different computations submitted by the parties under Rule 155. The parties have filed various documents detailing their positions. Petitioners' computation and their statements in opposition to respondent's computation are set forth in Petitioner's [sic] Computation for Entry of Decision, petitioners' Motion to Enter Decision, Memorandum In Support of Petitioners' Computation For Entry Of Decision (herein referred to as petitioners' Memorandum), petitioners' Motion For Leave to Amend *189 Pleadings, petitioners' Amendment of Petition By Interlineation, and Petitioners' Second Motion for Reconsideration. Respondent's computation and statements in opposition to petitioners' computation are set forth in Respondent's Computation For Entry Of Decision, respondent's Notice of Objection, Respondent's Memorandum In Support of Notice of Objection, and respondent's Report. The parties have also argued their positions during a hearing before the Court. Based upon the above pleadings and argument of the parties, there are six issues for decision: First, whether petitioners may amend their petition to claim a deduction for a net operating loss carryback from 1986; second, whether petitioners may also amend their petition to claim a deduction for depreciation on a "temporary structure"; third, whether the tax deficiencies for the years in issue may be offset by alleged overpayments in 1979 and 1980; fourth, whether the investment credit for 1981 is subject to limitation under section 46(a)(3) (all section references in this opinion are to the Internal Revenue Code, as amended and in effect during the years in issue, unless stated otherwise); fifth, whether petitioners are subject *190 to investment credit recapture in 1982 of $ 919; and sixth, whether the Court should reconsider its findings of fact and opinion in T.C. Memo. 1993-243, based upon alleged fraud that was perpetrated on the Court. Net Operating Loss Carryback From 1986
In their Motion For Leave to Amend Pleadings, petitioners ask the Court for permission to claim an NOL carryback from 1986. Petitioners raised the 1986 NOL carryback claim for the first time in these proceedings when they submitted their computation under Rule 155. Petitioners had not previously raised the issue in their petition, at trial, or in their posttrial briefs. They had introduced no evidence at trial that related to their 1986 taxable year. In petitioners' Memorandum, they argue as follows: The 1986 net operating loss should be included in the calculations because it does not raise a new issue, the information to verify the net operating loss is solely within the respondent's purview, the respondent was apprised of the 1986 net operating loss by petitioners' filing of Application for Tentative Refund in 1988 setting forth the 1986 loss, and such carryback is not prejudicial to respondent. *191 The respondent is equitably estopped from challenging the 1986 net operating loss carryback to prior tax years involved herein. As early as 1987, the respondent was made aware of the 1986 net operating loss, when the petitioners' [sic] filed on May 26, 1987, their 1986 Form 1040, Income Tax Petition [sic] of Individual. Further, on February 5, 1988, the respondent knew of the 1986 net operating loss, when the petitioners filed their Form 1045, Application for Tentative Refund, in which they reflect a total carryback of $ 601,307.00 to tax year 1985 * * *. On November 3, 1992, petitioners communicated with respondent, requesting verification of net operating loss carrybacks. * * * On November 13, 1992, respondent received notice of the 1986 and 1985 net operating losses of "approximately $ 1.6 million and $ 558,000.00 respectively["], when Form 911, Application for Taxpayer Assistance Order (ATAO) to Relieve Hardship, was filed when respondent attempted to levy on petitioner E.P. Vest's accounts * * *. In an effort to substantiate the above assertion that they had given ample notice to respondent of the subject NOL claim, petitioners attached three documents to their Memorandum *192 that allegedly had been filed with or sent to respondent. The first document attached to petitioners' Memorandum is Form 1045, Application for Tentative Refund (Refund Application), which purports to have been signed by petitioners on February 3 and 5, 1988. In the Refund Application, petitioners claim an NOL carryback of $ 1,444,429.82, from 1986. They seek to carry back $ 115,628 and $ 143,504 of the 1986 NOL to their 1983 and 1984 tax years, respectively. We note that the Form 1045 used by petitioners is a 1985 version of the form, which was altered by obscuring the year "1985" and replacing it with "1986" in several places. We further note that the form contains various other errors, and important portions of it are substantially incomplete. Finally, we note that respondent has informally represented to the Court that the Government has no record of the filing of the Refund Application. The second document attached to petitioners' Memorandum is a letter, dated November 3, 1992, from petitioners' counsel, Mr. Steven Akre, addressed to Mr. Kenneth W. Dosenbach, Revenue Officer, Internal Revenue Service, Springfield, Illinois. The letter concerns the action to be taken by *193 respondent to recoup an erroneous refund issued to petitioners for their 1983 taxable year. It states: "As our first and preferred alternative, we are requesting the application of loss carrybacks and investments [sic] tax credits to reimburse the deficiency or obligation". Nowhere in the letter does Mr. Akre identify either the source of petitioners' NOL claim or the value of the claim involved. Last, petitioners attached to the Memorandum a Form 911, Application for Taxpayer Assistance Order (ATAO) to Relieve Hardship, dated November 13, 1992, and signed by Mr. Akre. In that document, Mr. Akre requests release of levies made by respondent on petitioners' property in connection with the erroneous 1983 refund. Among other things, Mr. Akre states that "taxpayers have net operating losses carrybacks [sic] and investment tax credits of approximately $ 1.6 million and $ 558,000, respectively." Mr. Akre does not identify the source of the claimed NOL's. We further note the discrepancy between the $ 1.6 million figure mentioned on the Form 911 and the $ 1,444,429.82 NOL claimed from 1986 on the Refund Application. Respondent objects to petitioners' attempt to introduce the 1986 NOL *194 carryback issue at this stage of the proceedings on the grounds that Rule 155(c) prohibits the introduction of new issues. Rule 155(c) provides as follows: (c) Limit on Argument: Any argument under this Rule will be confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matters disposed of by the Court's findings and conclusions or to any new issues. This Rule is not to be regarded as affording an opportunity for retrial or reconsideration. The general rule is that new issues may not be raised in a Rule 155 proceeding. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308 (1932) (decision under predecessor of current Rule 155); Harris v. Commissioner, 99 T.C. 121, 123-124 (1992), affd. 16 F.3d 75 (5th Cir. 1994); Cloes v. Commissioner, 79 T.C. 933, 935 (1982); Estate of Papson v. Commissioner, 74 T.C. 1338, 1340 (1980). A different rule would *195 violate principles of proper judicial administration which demand that there be an end to litigation and that bifurcated trials be avoided. See Cloes v. Commissioner, supra at 937. We have held that an NOL carryback claim is a new issue which cannot be raised for the first time in a Rule 155 proceeding. E.g., Miller v. Commissioner, T.C. Memo. 1993-588; Gladstone v. Commissioner, T.C. Memo. 1992-10; see also Molasky v. Commissioner, 91 T.C. 683 (1988), affd. on this issue 897 F.2d 334 (8th Cir. 1990) (taxpayer cannot raise income averaging for the first time in a Rule 155 proceeding); Estate of Papson v. Commissioner, supra (taxpayer cannot raise eligibility of certain U.S. Treasury bonds for use in payment of Federal estate taxes in a Rule 155 proceeding); cf. Yoo Han & Co. v. Commissioner, T.C. Memo. 1991-308; Himmelwright v. Commissioner, T.C. Memo. 1988-114. The reason is that, ordinarily, the record would have to be reopened *196 in order to permit the taxpayer to introduce evidence establishing his entitlement to the carryback and its amount, and to give the Commissioner an opportunity to contest the taxpayer's eligibility for the carryback. E.g., Harris v. Commissioner, supra at 124. The subject NOL carryback arose in 1986, a closed year that was not at issue in the underlying proceedings. Petitioners introduced no evidence regarding their 1986 tax year. If we were to grant petitioners' motion to raise this issue, we would be compelled to reopen the record and afford petitioners a second trial, in which the validity of every item of income, deduction, and credit reported on petitioners' 1986 joint income tax return would be at issue. The ensuing proceedings could easily rival the length and complexity of those already completed by the parties. Such a continuation of this case would contravene the principles of judicial economy that underlie Rule 155. See Cloes v. Commissioner, supra at 937. Petitioners do not dispute the foregoing summary of the law, but attempt to distinguish this case by arguing that their 1986 NOL carryback *197 claim is not a "new issue". They would limit the scope of that term to matters that are "a total surprise * * * [where] there was nothing else filed with the Respondent in order to give them [sic] a hint * * * that they intended to make that claim." They cite no authority for that position. Contrary to petitioners' argument, the law is clear that a matter ordinarily qualifies as a "new issue" for purposes of Rule 155 where, to decide the issue, the Court would have to reopen the record and conduct further proceedings to admit additional evidence. See Cloes v. Commissioner, supra at 935-937; cf. Vetco, Inc. v. Commissioner, 95 T.C. 579, 588 (1990). Similarly, we decline to grant petitioners' motion for leave to amend their petition under Rule 41 to raise the 1986 NOL carryback as an issue in this case. The absence of evidence introduced at trial concerning petitioners' 1986 return makes it clear that the carryback of the alleged 1986 NOL was not "tried by express or implied consent of the parties". Rule 41(b)(1). Furthermore, justice does not require that petitioners be given leave to amend their pleadings to raise *198 the issue. See Rule 41(a). Petitioners admit that they possessed the information regarding their 1986 NOL claim within 8 months of filing their petition, long before trial. Petitioners never amended their pleadings to raise this matter as an issue. In the lengthy course of the proceedings in this case, the parties settled numerous issues, and this Court heard and resolved many more. Not once during that period did petitioners raise the matter of their claimed NOL carryback from 1986, nor did they introduce any evidence relating to their 1986 tax year. In contrast, we note that petitioners specifically pled their eligibility to carry back an NOL from 1985. The parties stipulated the validity and applicability of the 1985 NOL in the amount of $ 540,738, and respondent's computation under Rule 155 incorporates the 1985 NOL. We may take into account, as a ground for refusing to permit amendment, the fact that the movant's actions lacked diligence, for which he failed to show some valid reason. Kirby v. P.R. Malloy & Co., 489 F.2d 904, 912 (7th Cir. 1973); Freeman v. Continental Gin Co., 381 F.2d 459, 469 (5th Cir. 1967).
*199 The only grounds petitioners advance in explanation of their failure timely to raise their claim is that "The complete application of the 1986 net operating loss could not have been asserted prior to this Court's finding and conclusions." However, Rule 31(c) allows pleading in the alternative, and the Court generally requires it. See, e.g., Cloes v. Commissioner, 79 T.C. at 937 ("It is no answer to say that the need to follow such a course could not have been ascertained until the Court had determined petitioners' income and allowable deductions for the years involved."). Petitioners' lack of action indicates both undue delay, see Foman v. Davis, 371 U.S. 178, 182 (1962), and a lack of diligence, Stearns v. Consolidated Management, Inc., 747 F.2d 1105, 1117 (7th Cir. 1984) (Coffey, Circuit Judge, concurring in part and dissenting in part) Fed. R. Civ. P. 15(a)). Furthermore, we may take into consideration, as a form of prejudice to respondent, the fact that a new trial would be required and that respondent would be forced to incur the delays and costs of an additional proceeding. See *200 Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-331 (1971); Knapp v. Whitaker, 757 F.2d 827, 849 (7th Cir. 1985). Depreciation on Temporary Structure
In our first opinion, we sustained respondent's determination that a payment of $ 52,230 for construction of a "temporary structure" to use a CAT Scanner was not deductible in 1984 but must be capitalized. Vest v. Commissioner, T.C. Memo. 1993-243. Petitioners' computation claims depreciation on the capitalized cost of the structure and states as follows: "In the event the structure is depreciated over a three (3) year period, additional deduction of $ 13,058.00 should be allowed." Furthermore, petitioners' Motion for Leave to Amend Pleadings seeks permission to raise this matter as an issue in the case. Petitioners' motion states: "The issue of cost recovery for the structure over its useful life (1984 to 1986) was tried by the parties." Thus, petitioners appear to rely on Rule 41(b)(1), under which the Court may allow amendment of the pleadings to conform to the evidence and to raise issues tried by express or implied *201 consent of the parties. In making this argument, petitioners overlook our first opinion, which states: "The recovery of the amounts paid through depreciation or as a loss is a separate question that is not presented here." Notwithstanding the above, if we were to consider this issue, it would be clear that petitioners failed to prove that they are entitled to depreciation on the cost of the temporary structure during their 1984 tax year. Rule 142(a). The period for depreciation of an asset begins when the asset is placed in service. Sec. 1.167(a)-10(b), Income Tax Regs. Petitioners introduced no evidence to prove that the temporary structure was placed in service during 1984. In fact, the evidence in the record suggests that the temporary structure was placed in service after 1984. Petitioners did not make the first payment on the $ 70,000 construction project, $ 52,230, until December 30, 1984. Vest v. Commissioner, T.C. Memo. 1993-243. There is no evidence to suggest that the contractor built the temporary structure before it received this first payment on the project from petitioners. Furthermore, petitioners themselves appear to concede *202 that the temporary structure was not placed in service until after 1984. Petitioners assert in their posttrial briefs that "the structure had an actual useful life of less than one year" and, at trial, petitioner T. Bruce Vest testified that the structure was razed in 1986. Taken together, these two statements suggest that the temporary structure was placed in service sometime in 1985, a year that is not before the Court. Based upon the record of this case, therefore, petitioners could not prevail on the issue because they failed to prove that the structure was placed in service prior to 1985. Accordingly, it would be futile to grant petitioners' motion to raise the issue at this point in the proceedings, and we will not do so. See, e.g., Foman v. Davis, supra at 182; Garcia v. City of Chicago, 24 F.3d 966, 970 (7th Cir. 1994). 1979 and 1980 Overpayment Claims
The notice of deficiency in this case involves petitioners' 1981, 1982, 1983, and 1984 tax years. In their Computation for Entry of Decision, petitioners assert that they overpaid their taxes for 1979 and 1980 by $ 7,107 and $ 20,472, respectively. *203 Petitioners' computation offsets the asserted overpayments against deficiencies redetermined for the tax years involved in this case. Petitioners' computation further contains a claim for interest on these asserted overpayments. In petitioners' Memorandum, they explain their position as follows: In their computations, Petitioners utilized available investment tax credits. The application of carryback rules for tax years 1982 and 1983 results in a $ 7,107.00 overpayment in 1979 and a $ 20,472.00 overpayment in 1980, due to reducing the alternative minimum tax. The investment tax credit carryback to years 1979 and 1980 was created by carryback of the 1985 net operating loss. The jurisdiction of this Court is conferred by statute. Sec. 7442. As applicable to this case, the Court is given jurisdiction to redetermine the correct amount of the deficiency determined by the Commissioner in the notice of deficiency or to determine an overpayment for a particular tax year in which the Commissioner has determined a deficiency. See secs. 6212-6214; Estate of Baumgardner v. Commissioner, 85 T.C. 445, 448 (1985) (citing Commissioner v. Gooch Milling & Elevator Co., 320 U.S. 418, 420 (1943)). *204 Respondent has not determined a tax deficiency in petitioners' 1979 or 1980 return, and neither of those years is before the Court in this case. Estate of Baumgardner v. Commissioner, supra at 448. Moreover, petitioners raised these overpayment claims with respect to 1979 and 1980 for the first time in petitioners' Memorandum. Petitioners failed to raise these claims in their petition or at trial, and the record of this case does not include the facts necessary to determine petitioners' tax liability for 1979 and 1980. If we accepted petitioners' position that they are entitled to raise this new issue at this stage in the proceedings, we would be compelled to reopen the record and afford petitioners a second trial. As discussed above in the case of petitioners' claim to be entitled to carry back an NOL that arose in 1986, new issues may not be raised in a Rule 155 proceeding. Bankers' Pocahontas Coal Co. v. Burnet, 287 U.S. 308 (1932) (decision under predecessor of current Rule 155); Harris v. Commissioner, 99 T.C. at 123-124; Cloes v. Commissioner, 79 T.C. at 935; *205 Estate of Papson v. Commissioner, 74 T.C. at 1340. We see no reason for a different result in this case. Limitation of Investment Credit for 1981
Petitioners' computation of the tax deficiency for 1981 claims investment credit in the aggregate amount of $ 61,070. On the other hand, respondent's computation allows investment credit in the aggregate amount of $ 54,631, $ 6,439 less. According to respondent, this difference is attributable to the limitation imposed by section 46(a)(3) on the amount of investment credit based upon the amount of tax for the year. Section 46(a)(3) provides as follows: (3) Limitation based on amount of tax. -- Notwithstanding paragraph (1), the credit allowed by section 38 for the taxable year shall not exceed -- (A) so much of the liability for tax for the taxable year as does not exceed $ 25,000, plus (B) the following percentage of so much of the liability for tax for the taxable year as exceeds $ 25,000:
If the taxable year ends in:
The percentage is:
1979
60
1980
70
1981
80
1982 or thereafter
90
Respondent notes that under the above limitation, the investment credit for 1981 should be no more *206 than $ 53,856; i.e., $ 775 less than the amount of investment credit allowed in respondent's computation. However, in her computation under Rule 155, respondent used the same amount of investment credit, $ 54,631, as was allowed in the notice of deficiency, i.e., $ 54,631. Petitioners' Memorandum complains about respondent's attempt "to interject investment tax credit limitations pursuant to Code section 46(c)(3), the noncorporate lessor rules". Petitioners never discuss the limitation under section 46(a)(3) and, thus, they do not come to grips with the actual limitation imposed by respondent. In any event, section 46(a)(3) is purely a mathematical limitation on the amount of investment credit that a taxpayer may claim, based on the amount of the taxpayer's precredit tax liability. This type of mathematical adjustment is permissible in a Rule 155 computation. Cf. The Home Group, Inc. v. Commissioner, 91 T.C. 265, 271 (1988), affd. 875 F.2d 377 (2d Cir. 1989). 1982 Investment Credit Recapture
The parties agreed in a stipulation of agreed adjustments that petitioners' 1982 income tax liability should be increased *207 by investment credit recapture in the amount of $ 919. During oral argument, respondent's counsel also stated that "the $ 919 was, in fact, assessed and was, in fact, paid." Nevertheless, the parties' computations of petitioners' tax for 1982 differ by $ 919, the amount of this adjustment. Petitioners computed an overpayment for 1982 in the amount of $ 22,829, and respondent computed an overpayment for the year in the amount of $ 21,910, or $ 919 less. This matter was discussed at the hearing to resolve the computations. At that time, it became clear that the difference between the parties was whether the recapture amount of $ 919 was included in "additional tax assessed 04-16-84" in the amount of $ 18,447, as shown on page 2 of schedule 1 of respondent's revised computation. During the hearing, respondent's counsel stated as follows: MR. BITNER: Your Honor, I might suggest that on our respective returns to our offices for this limited issue, that I can forward to Mr. Akre in very rapid fashion the documentation that I personally have in my office, and I did not bring it to Washington not thinking that that was their argument, to show how the number that is at the bottom line *208 of the Form 870 was calculated. I can do that tomorrow, Your Honor, and we can notify the Court. It is the Court's understanding that petitioners are now in agreement with respondent's computation on this point. Fraud on the Court
Petitioners submitted a letter that the Court has treated as petitioners' Second Motion for Reconsideration. The thrust of petitioners' motion is that a fraud was perpetrated on the Court that requires the Court to hold a new trial with respect to two of the issues decided in the Court's first opinion; viz, whether petitioners are entitled to investment credit on a Model 9800 Scanner System, and whether the underpayments of tax for 1982 and 1983 are due to fraud on the part of petitioner T. Bruce Vest. In support of their motion, petitioners have submitted various documents in an attempt to prove that Mr. Eugene Cowsert, the president of the Hospital during the years at issue, committed perjury during his testimony at trial. Mr. Cowsert's testimony was part of respondent's proof that petitioners were liable for tax deficiencies for 1982 and 1983, and that petitioner T. Bruce Vest was liable for fraud additions with regard to his 1982 and 1983 *209 returns. Petitioners' Second Motion For Reconsideration consists of a rehash of the factual contentions made by petitioners at trial. Those contentions have been sufficiently addressed in our first opinion, and we see no need to address them again here. We would point out, however, that we observed Mr. Cowsert's testimony at trial and found him to be a credible and persuasive witness. Nothing contained in petitioners' Second Motion For Reconsideration makes us believe otherwise. We have reviewed our first opinion in light of the documents and arguments contained in petitioners second motion for reconsideration and, based upon that reconsideration, we affirm our first opinion. To reflect to foregoing, An appropriate order will be issued and decision will be entered in accordance with respondent's revised computation as amended. Footnotes
*. This opinion supplements our opinion in Vest v. Commissioner, at T.C. Memo. 1993-243.↩