T.C. Memo. 2009-152

UNITED STATES TAX COURT

ALAN F. BEANE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6529-05.                    Filed June 25, 2009.

William S. Gannon, for petitioner.

Lydia A. Branche, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  Respondent determined a deficiency of
$3,080,430 in petitioner's Federal income tax for 1998.  After
concessions, the issues for decision are the extent to which, if
at all, the deficiency for 1998 may be reduced or an overpayment
may be determined as a result of erroneously reported self-
employment tax for 1998, assessed additions to tax for 1998, loss

carrybacks from subsequent years, and an overpayment of tax for 1999.

Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Florida at the time he filed his petition.

Petitioner's Employment With AAVID

Before October 14, 1993, petitioner was a founder and chief executive at AAVID Engineering, Inc. In 1993, AAVID Thermal Technologies, Inc., a Delaware corporation, was formed to acquire AAVID Engineering, Inc. On or about September 25, 1993, AAVID Thermal Technologies, Inc., acquired AAVID Engineering, Inc., and was the sole shareholder. Subsequently, on a fully diluted basis, petitioner became the largest individual shareholder in AAVID Thermal Technologies, Inc.

On October 14, 1993, AAVID Thermal Technologies, Inc., and AAVID Engineering, Inc. (collectively, AAVID), and petitioner entered into an employment agreement for petitioner to continue his duties as chief executive officer (CEO) and as a member of the board of directors of AAVID.

AAVID and petitioner modified the employment agreement on September 25, 1995. The resulting amended agreement reflected modifications that were required by the underwriters of AAVID's planned initial public offering.

The employment agreement provided for petitioner to be CEO for an initial term of 3 years, and, thereafter, to be renewed automatically for 1-year terms unless either party to the employment agreement gave notice of intent not to renew, and the amended agreement incorporated these terms. During the initial 3-year term, petitioner gave notice of intent not to renew, and the employment agreement was not renewed. Therefore, petitioner ceased to be CEO but continued as a director and consultant to management.

Petitioner was on the board of directors of AAVID until his resignation from this position on January 3, 1998, thereafter continuing as an adviser. In his capacity as a board member and adviser, petitioner was an employee of AAVID during 1998 and received a 1998 Form W-2, Wage and Tax Statement, that reported wages from AAVID of $95,144.35.

In connection with his employment as CEO of AAVID petitioner received options to purchase 1,518,000 shares of AAVID stock at or about the same time he executed the original employment agreement. The options were nonstatutory and were granted to

petitioner on October 14 and 16, 1993. The options were scheduled to vest and become exercisable over a 4-year period with 25-percent vesting each year. AAVID had its initial public offering on January 29, 1996. At that time, the options converted to warrants to purchase shares of AAVID's common stock. As of July 22, 1997, all of the options that petitioner had received were fully vested. Petitioner exercised the options received from AAVID in 1997, 1998, and 1999 and then sold the underlying shares in 1997, 1998, 1999, and 2000.

Petitioner's Options Transactions and Reporting

In 1997, petitioner exercised options and acquired a total of 225,000 shares of AAVID's common stock at a cost of $42,660. The shares had a total fair market value of $4,830,000, resulting in gain of $4,787,340. AAVID did not provide petitioner with a Form W-2 with respect to the exercise of the options in 1997. Petitioner did not report income regarding the exercise of the options on his originally filed 1997 tax return. On an amended 1997 tax return that petitioner filed on or about August 16, 1999, he reported $2,087,657 as ordinary income from the exercise of the 1997 options. Petitioner underreported income from the exercise of the options by $2,699,683. Petitioner's amended return was processed by the Internal Revenue Service (IRS), and he received an erroneous refund of $829,991 as a result.

In 1998, petitioner exercised options and acquired a total of 1,025,000 shares at a cost of $2,208,936. The shares had a total fair market value of $24,090,625, resulting in gain of $21,886,688. AAVID did not provide petitioner with a Form W-2 with respect to the exercise of the options in 1998. Petitioner reported $13,511,014 of the $21,886,689 of income from the exercise of the options in 1998 on the Schedule C, Profit or Loss From Business, of his 1998 tax return.

With respect to petitioner's exercise of the options in 1997, 1998, and 1999 AAVID did not withhold taxes for petitioner's contribution pursuant to the Federal Insurance Contributions Act (FICA). On his 1998 tax return petitioner treated the income realized from the exercise of the options as income subject to the Self-Employment Contributions Act (SECA) and reported SECA taxes. Petitioner reported a SECA tax liability of $264,877 and claimed a deduction of 50 percent, or $132,439.

In 1999, petitioner exercised options and acquired a total of 268,000 shares at a cost of $588,956. The shares had a total fair market value of $5,527,500, resulting in a gain of $4,938,543. Petitioner reported $10,139,696 in income from the exercise of options as self-employment income on his 1999 tax return.

Petitioner sold the option stock and sustained the following capital gains and losses in 1997 through 2000:

| Year | Shares | Proceeds | Basis | Gain/loss |
|------|--------|----------|-------|-----------|
| 1997 | 200,000 | $4,495,250 | $4,303,299 | $191,951 |
| 1998 | 305,000 | 7,412,601 | 9,423,763 | (2,011,162) |
| 1999 | 305,000 | 5,089,143 | 7,182,609 | (2,093,466) |
| 2000 | 708,000 | 18,021,645 | 13,548,488 | 4,473,157 |

If the proceeds of the sales of the option stock had been correctly reported as capital gains and losses on Schedules D, Capital Gains and Losses, to petitioner's returns for 1998 through 2000, petitioner's net long-term and short-term capital loss for 1998 would be $1,865,140, of which only $1,500 would be used in 1998.

Petitioner's Other Losses

Petitioner has a 45.977-percent ownership interest in Materials Innovation, Inc. (Innovation), an S corporation. Petitioner also has a 45.977-percent profit-sharing interest and a 100-percent loss-sharing interest in a partnership called MII Technologies, LLC (Technologies), formerly known as MII Sensors.

Innovation and Technologies sustained gains and losses as follows:

| Year | Innovation | Technologies |
|------|-----------|--------------|
| 1996 | $16,374 | ($1,087,759) |
| 1997 | 53,122 | (2,388,503) |
| 1998 | 401,176 | (3,950,080) |
| 1999 | 5,062 | (4,347,215) |
| 2000 | (178,001) | (3,758,680) |
| 2001 | (158,464) | (2,601,036) |
| 2002 | (257,214) | (1,157,043) |

On his tax returns for 1996 through 2002 petitioner correctly reported the Innovation and Technologies income/losses. Petitioner has sufficient basis in Innovation and Technologies to claim the losses on his tax returns for 1996 through 2002.

OPINION

The amounts set out in our findings of fact are based on stipulations and calculations the parties presented. We have generally adopted respondent's proposed findings because petitioner's briefs did not comply with Rule 151(e) and did not assist the Court in making sense of a voluminous and confusing record. See Stringer v. Commissioner, 84 T.C. 693, 703-705 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986).

Trial of this case commenced in Boston in April 2008 and was suspended after petitioner testified and presented a series of charts analyzing his options transactions. The charts and underlying documents had not previously been presented to respondent but were useful in determining the correct amounts of petitioner's gains and losses from the transactions. The trial resumed in September 2008 after the parties had substantially narrowed their disputes as to the options transactions and the loss carryovers. Petitioner's brief acknowledges that after a meeting on the day before trial resumed, "almost no factual issues remained to be tried by this Court."

The remaining disagreements concern the manner in which agreed amounts of income and losses affect the decision to be entered in this case, which is based solely on a notice of deficiency for 1998. Petitioner argues that

> Irrespective of how this Court rules on the other issues, the following conclusions are inescapable on the record: (a) Mr. Beane owes IRS $906,000 * * * for 1998, exclusive of the overpayment/refund; (b) IRS owes Mr. Beane more than $2,505,000 on account of the 1999 overpayment; and (c) on a net basis, IRS owes Mr. Beane $1,616,226, plus interest at the statutory rate until it refunds the overpayment.

Petitioner asserts that respondent's proposed findings of fact showing application of losses carried back to 1997 and 1998 from 1999 and 2000 are "irrelevant because they do not prove or tend to prove how much Mr. Beane owes the IRS or how much it owes Mr. Beane." Petitioner attempts to net against his tax liability for 1998 an overpayment for 1999 and to have the Court order a refund of the net amount, with interest.

> Respondent contends that

> Although the Court may consider the capital gains and losses petitioner sustained in 1997 through 2000 and petitioner's available [net operating losses] in those years in order to determine petitioner's deficiency in 1998, it has no jurisdiction to determine a refund in 1999 or 2000.

Respondent also argues that (1) the erroneously reported and paid self-employment taxes for 1998 (net after the deduction of 50 percent of those taxes on petitioner's erroneously prepared

Schedule C) should be offset by the employee share of FICA taxes not withheld and paid over by AAVID pursuant to section 6521(a), and (2) this Court does not have jurisdiction to order or credit a refund of the unabated late payment addition to tax assessed under section 6651(a)(2) at the time petitioner's 1998 return was filed.

Petitioner argues that the jurisdictional issues were belatedly raised by respondent, but jurisdictional issues may and must be raised at any time. See, e.g., Normac, Inc. v. Commissioner, 90 T.C. 142, 146-147 (1988); Kahle v. Commissioner, 88 T.C. 1063, 1063 n.3 (1987)(and cases cited therein).

We conclude that respondent's arguments are consistent with the statutory provisions establishing and limiting our jurisdiction and that petitioner confuses the determination of a deficiency with an accounting for taxes owed, amounts assessed, amounts paid, and net amounts due. Computation and adjudication of the net amounts owed by or to petitioner over a period of years is well beyond the proper scope of this case.

Definition of a Deficiency

This case was commenced in response to a notice determining a deficiency in petitioner's Federal income tax for 1998. A "deficiency" is defined in section 6211(a) as

the amount by which the tax imposed * * * exceeds the excess of--

        (1) the sum of

            (A) the amount shown as the tax by the
        taxpayer upon his return * * * plus

            (B) the amounts previously assessed (or
        collected without assessment) as a deficiency,
        over-

        (2) the amount of rebates * * *

    Briefly, the deficiency in this case is the difference
between the tax due on petitioner's taxable income for 1998 less
the tax he reported on the return filed for 1998.  As set forth
in the notice sent to petitioner, that amount was $3,080,430, or
the difference between $7,754,462 and $4,674,032.  The amount
will now be reduced because of respondent's concessions as to
loss carryovers, and the final deficiency will be determined
under Rule 155, as described below.  Petitioner concedes that the
amount owed for 1998, i.e., the deficiency, will be at least
$906,000.

    The notice of deficiency was sent to petitioner under
section 6212, and the petition was filed under section 6213.
Section 6214(b) provides:

        SEC. 6214(b). Jurisdiction Over Other Years and
    Quarters.--
    The Tax Court in redetermining a deficiency of income
    tax for any taxable year * * * shall consider such
    facts with relation to the taxes for other years * * *
    as may be necessary correctly to redetermine the amount
    of such deficiency, but in so doing shall have no
    jurisdiction to determine whether or not the tax for
    any other year * * * has been overpaid or underpaid.
    Notwithstanding the preceding sentence, the Tax Court
    may apply the doctrine of equitable recoupment to the

> same extent that it is available in civil tax cases
> before the district courts of the United States and the
> United States Court of Federal Claims.

Our jurisdiction to determine whether there has been an overpayment is limited to the year for which a notice of deficiency has been issued. Menard, Inc. v. Commissioner, 130 T.C. 54, 60 (2008).

Petitioner does not claim that the doctrine of equitable recoupment referred to in section 6214(b) applies, and the circumstances under which it does apply are not present here. See Menard, Inc. v. Commissioner, supra at 62-63. Because the examination of petitioner's returns showed that the amount petitioner reported for 1999 exceeded the correct amount (by $2,247,616), there was no deficiency for that year; no notice of deficiency was sent for that year; and no right to petition this Court existed for that year. We have no jurisdiction in this case to redetermine the amount of the overpayment for 1999 or to determine the accrued interest on that overpayment, notwithstanding petitioner's insistence that he is entitled to offset those amounts against the admitted deficiency for 1998. Cf. Estate of Baumgardner v. Commissioner, 85 T.C. 445, 448 (1985); see also Vest v. Commissioner, T.C. Memo. 1995-188. The amount ultimately due to or from petitioner will not be known until the decision is entered in this case and the correct deficiency for 1998 is assessed. Petitioner's account will then

reflect adjustments that have been made or agreed upon for other years.

Section 6521(a)

Petitioner erroneously reported his options transactions on Schedule C of his return for 1998 and mistakenly reported self-employment tax on the amount that he reported as gain. The parties now agree that petitioner was an employee during 1998 and that FICA taxes should have been withheld and paid by his employer. Petitioner argues that respondent cannot recover the amounts against petitioner because a claim against the employer was not timely pursued, and petitioner seeks a refund of the amount reported and paid for 1998. Respondent seeks to offset petitioner's share of FICA taxes against credit for the amount of self-employment taxes he reported and partially deducted on his return for 1998.

Respondent relies on section 6521(a), which provides as follows:

> SEC. 6521(a). Self-Employment Tax and Tax on Wages.--
> In the case of the tax imposed by chapter 2 (relating to tax on self-employment income) and the tax imposed by section 3101 (relating to tax on employees under the Federal Insurance Contributions Act)--
>
> (1) If an amount is erroneously treated as self-employment income, or if an amount is erroneously treated as wages, and
>
> (2) If the correction of the error would require an assessment of one such tax and the refund or credit of the other tax, and

(3) If at any time the correction of the error is authorized as to one such tax but is prevented as to the other tax by any law or rule of law (other than section 7122, relating to compromises),

then, if the correction authorized is made, the amount of the assessment, or the amount of the credit or refund, as the case may be, authorized as to the one tax shall be reduced by the amount of the credit or refund, or the amount of the assessment, as the case may be, which would be required with respect to such other tax for the correction of the error if such credit or refund, or such assessment, of such other tax were not prevented by any law or rule of law (other than section 7122, relating to compromises).

Petitioner claims that the offset is not permitted because FICA taxes have not been assessed against him, and, he contends, the amount cannot be determined from the record. His petition, however, prevented assessment of amounts properly included in the deficiency for 1998. See sec. 6512(a). The notice of deficiency included an adjustment for self-employment tax, which is therefore before the Court in this case. Redetermination of self-employment tax must take account of the offset provided under section 6521(a) resulting from reclassification of his income from self-employment income to wages subject to FICA taxes. The amount of income subject to FICA taxes will necessarily be determined from the record in this case as part of the Rule 155 computation described below. Petitioner has provided neither persuasive reason nor authority for not applying section 6521(a) in the manner proposed by respondent.

Section 6651(a)(2)

Petitioner contends that the Court should order a refund of failure-to-pay penalties assessed in September 1999 after he filed his 1998 return in August 1999. He contends that his reported tax liability was paid at that time and that he owes nothing for 1998 "on a net basis". As explained above, his liability for 1998 cannot be determined in this case "on a net basis". Payment of the amount due for 1998 was due on April 15, 1999, and an addition to tax under section 6651(a)(2) applied from that time until payment was made. See Godwin v. Commissioner, T.C. Memo. 2003-289, affd. 132 Fed. Appx. 785 (11th Cir. 2005); sec. 1.6081-4(b), Income Tax Regs. (granting by the IRS of an automatic extension of time to file a return does not operate to extend the time for payment of tax due on the return).

Rule 155 Computations

Rule 155(a) provides for computations to be submitted by the parties "pursuant to the Court's determination of the issues, showing the correct amount to be included in the decision." For our purposes in this case, the amount to be included in the decision will reflect the tax due for 1998 on the corrected income that petitioner received during that year, reduced by the loss carryovers from other years and other income, deduction, and credit adjustments. The tax due will reflect prior payments petitioner remitted with his return for 1998, including a

recomputed credit for self-employment taxes paid.  There will not, however, be an "overpayment" for 1998, because the taxes paid for 1999 do not reduce the deficiency for 1998 as defined above.  The Rule 155 computation ordered here, moreover, will not be an invitation for petitioner to reargue his claims to refunds arising in other years.  See Rule 155(c).

We have considered the other arguments of the parties. Petitioner repeatedly criticizes the results of the examination, other positions of respondent, and delay in refunding his overpayment for 1999.  Petitioner admits that the examination "may have been accurate with respect to [his] revenues during 1998 and 1999" but complains that it was "inaccurate with respect to the amounts due to and from the IRS."  The unfortunate circumstances of this case, however, resulted from petitioner's underreporting of his options income for 1998 and mischaracterization of that income as self-employment income.  It was his obligation to establish the carrybacks, not the examiner's obligation to search them out.  Once he presented adequate substantiation of his basis in the options sold and his net operating losses, respondent conceded them.  His misunderstanding of the scope of this case extended the proceedings unnecessarily.  The arguments not addressed in this opinion are irrelevant to our decision or have even less merit than those addressed.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.